STATE OF IOWA, Appellee, v. A. R. GRAVES, Appellant.

**CRIMINAL LAW:** Instruction—Assumption of Fact.  It is not error, in a criminal cause, to assume in instructions the truth of a fact fully admitted by both the State and the defendant.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 22, 1921.

THE defendant was indicted for murder in the second degree. Trial to a jury, and conviction for manslaughter. Defendant was sentenced to the penitentiary for a period not exceeding that provided by the statute. Defendant appeals.— *Affirmed*.

*Parsons & Mills* and *Robert Healy*, for appellant.

*Ben J. Gibson*, Attorney General, *Bruce J. Flick*, Assistant Attorney General, and *Vernon Seeburger*, Assistant County Attorney, for appellee.

PRESTON, J.—Substantially the only controverted fact in the case is whether the killing of deceased was or was not accidental. Defendant claimed that it was accidental. One of the errors assigned is that the evidence was insufficient to support the verdict of the jury. There was an abundance of evidence from which the jury could properly have found that the killing of deceased was not the result of an accidental shooting. This is so clear that we shall not go into the details of the evidence.

The appellant's abstract recites that defendant excepted to the instructions, and that such exceptions were entered of record. This is denied by the State in an amended abstract. The only other questions argued relate to alleged errors in the instructions, and particularly to Instructions 11 and 12. Under the rules, defendant is not entitled to be heard in regard to the instructions. Since it is a criminal case, we have examined the record with care, and will go only so far as to say that there is no conflict in the instructions, and that the other objections thereto are covered by other instructions given and other parts of those complained of. They are to be taken as a whole, and construed together.

Briefly, defendant's version of the transaction is that, on the 5th of May, 1920, about 9:30 or 10 o'clock at night, he came home from the road, and went to his home. His wife was gone, and there was nothing to eat in the house. He inquired by phone as to his wife's whereabouts, then went upstairs to comb his hair; and when he put the comb in the drawer, he noticed the pistol. He then started down towards the grocery store,

and saw that it was closed; then concluded to go to the drug store, to get some ice cream and wafers. When he was going down there, he saw an automobile coming, which he thought was his auto. He then stepped to the sidewalk and waited until the car came in sight to where he could see. He then ran and jumped on the running board of the car. He does not remember what he did or said. He saw another man and woman in the back seat, and another man whom he never saw before, sitting by the side of his wife. This was De Vault, the deceased. The automobile came to a stop. Defendant asked De Vault who he was, and he did not answer—they wouldn't any of them talk to him. De Vault got out of the car when it stopped; he started to go west. He took a step or two, and stumbled and fell.

"I pulled my gun—just held it up in front of the car; and as I did, my wife grabbed my arm, and at that time the gun went off. The discharge of the gun was accidental."

Other witnesses put the position of the parties and the transaction of the shooting somewhat differently than does the defendant. Deceased was shot in the back. After running a distance, he fell. He died soon afterwards. The clerk of the grand jury testifies that defendant stated before the grand jury that he ran in front of the car, and that De Vault was running east. There is no pretense that De Vault met his death in any other way, and there is no evidence that there was any other shot.

The testimony of the other witnesses shows, without any dispute whatever, that deceased was wounded by the discharge of a revolver in the hands of the defendant. The defendant admits it, but claims that the shooting was accidental. There were but five witnesses in chief for the State, and defendant and his wife were the only witnesses for defendant.

In one of the instructions, the court stated that the evidence shows without dispute that the deceased was wounded by the discharge of a revolver in the hand of the defendant. It is argued by appellant that the court, in a criminal case, had no right to assume that fact, which, as we have seen, was without any dispute. We have held in several cases that it is not error, even in a criminal case, to assume and treat as true a particular evidential fact which both parties admit to be true, and as to which there is no dispute. *State v. Archer,* 73 Iowa 320; *State*

*v. Anderson,* 154 Iowa 701, 704; *State v. McKnight,* 119 Iowa 79; *State v. Mitchell,* 130 Iowa 697, 701; *State v. Evans,* 122 Iowa 174; *State v. Cunningham,* 111 Iowa 233, 244; *State v. Wilson,* 166 Iowa 309, 326. The statute, Code Section 5386, provides that the rules relating to the instructions of juries in civil cases shall be applicable to the trial of criminal prosecutions. The rules of evidence are the same, as far as applicable. Code Section 5483. We think this case is ruled by the cases before cited, rather than by *State v. Lightfoot,* 107 Iowa 344, where the court instructed that the crime charged had been committed, although there was no direct evidence that the horses in question died from strychnine poisoning. The *Lightfoot* case is referred to in *State v. Anderson,* 154 Iowa, at 704, and perhaps other cases.

We discover no prejudicial error, and the judgment is— *Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.