STATE OF IOWA, Appellee, v. JOSEPH DUNNE, Appellant.

No. 46335.

July 28, 1944.

Frank D. Gilloon and John K. Chalmers, both of Dubuque, for appellant.

John M. Rankin, Attorney General, Wm. F. McFarlin, Assistant Attorney General, Paul Ahlers, County Attorney, R. S. Milner, L. C. Schroeder, and Stipp, Perry, Bannister & Carpenter, Special Assistant County Attorneys, for appellee.

GARFIELD, J.—Frank James, eighty-four years old, lived alone in a house on an acreage two miles northeast of Maquoketa. About 9 p. m. on May 2, 1942, after he had retired, James heard a rap at his door, which he proceeded to answer. After he reached up to unhook the screen door, someone stuck a gun into the screen. James tried to grab the gun but it discharged into his hand. He then went out onto the porch in pursuit of his assailant, who apparently became frightened. James saw two men in the dark and went back into the house to get his shotgun. As he was entering the house a second shot was fired, which did not strike him. The State contends the shots were fired by defendant, a farmer living in Jackson county, and that John Steiner, defendant's hired hand, participated in the crime. James had $660 in cash on his person at the time.

I. Defendant's first and third assignments of error challenge certain instructions to the jury. Defendant is not entitled to have these complaints considered here. The only exception taken below to the instructions now complained of in the third assignment was, "The defendant * * * excepts to the Instructions given * * *." No grounds were stated in support of the exception. A more specific exception was taken to instruction 10, complained of in the first assignment here. However, defendant does not now challenge instruction 10 upon any of the grounds stated in that exception.

Section 11495, Code, 1939, provides:

"Any party may take and file exceptions to the instructions * * * but all such exceptions shall specify * * * the grounds of such exceptions."

This statute is applicable to criminal as well as civil cases. Code section 13876; State v. Boston, 233 Iowa 1249, 1254, 11 N. W. 2d 407, 410, and cases cited. The general exception was not a compliance with section 11495. It is equally plain, under these same authorities, that defendant is not entitled to urge here complaints against instruction 10 not presented below by way of proper exception. See, also, State v. Ireland, 192 Iowa 489, 494, 185 N. W. 35.

II. The second assignment of error challenges as an

invasion of the province of the jury this portion of instruction 17:

"There is no dispute upon the proposition that an assault was made by someone, *armed with a pistol or revolver,* on the person of Frank James; or, that he was shot, in Jackson County, Iowa, on the night of May 2nd, 1942."

Particular complaint is made of the words italicized by us. In resistance to this assignment, the State relies on this claimed admission made by the defense in its opening statement to the jury:

"As has been stated by the County Attorney upon reading the Indictment, the defendant has pleaded not guilty. The defense is not contesting the fact or arguing with anybody about whether or not the crime was committed out on the James place on the night in question because, undoubtedly, the old gentleman was shot by somebody, but the defense will contend * * * that he was not there at that time, that he did not participate in the shooting at that time, and that he knows nothing whatsoever as to what occurred out there at the James place that night except in the same way that you and I have learned of this unfortunate affair."

The challenge to instruction 17 must be sustained.

We have held in several criminal cases that it is not error for the court in its instructions to assume as true an evidential fact which both parties admit and as to which there is no dispute. State v. Chumley, 229 Iowa 579, 586, 294 N. W. 764, and cases cited; State v. Evans, 229 Iowa 932, 936, 295 N. W. 433, 435; State v. Billberg, 229 Iowa 1208, 1215, 296 N. W. 396, 400. Among such decisions are homicide cases where the defendant admitted the killing but claimed it was the result of accident, intoxication, or self-defense. State v. Graves, 192 Iowa 623, 185 N. W. 78; State v. Mitchell, 130 Iowa 697, 701, 107 N. W. 804; State v. Archer, 73 Iowa 320, 35 N. W. 241. Such cases present some analogy to a civil case in which there is a plea in the nature of confession and avoidance.

But the above cases are not applicable here. Defendant made no admission that Mr. James was assaulted by someone

*armed with a pistol or revolver.* The opening statement for him contained no such admission. The indictment made no reference to a pistol or revolver. Nor can it be said this is a matter as to which there was no dispute.

The instruction was highly prejudicial. It was an important if not a vital element of the State's theory that the assault was committed by someone armed with a pistol or revolver. The State contends and offered evidence to prove that on the afternoon before the day of the assault defendant took a loaded, rusty revolver from the Posch tavern at Hurstville, two miles from Maquoketa; that he showed a rusty revolver to the accomplice, Steiner, the morning of the assault and said he intended to rob James. The State contends this stolen revolver was used in the assault upon James. This is the basis for its evidence tending to show defendant's theft of the Posch revolver. A finding that the assault was committed with a gun which was not a pistol or revolver would materially weaken the State's case.

The State also seeks to justify instruction 17 on the theory that it was conclusively shown the assault was committed by someone armed with a pistol or revolver. Assuming, without deciding, that in the absence of an admission by a defendant it is possible for the prosecution in a criminal case to prove a controverted fact so conclusively that the court may tell the jury it has been fully established, clearly this is not such a case. A definite description of the gun used in the shooting does not appear. Steiner's testimony is silent as to any description of the gun used in the assault. He does not say it was the same gun which defendant showed him earlier in the day, nor even that it was a revolver. The State itself characterizes Mr. James' description of the gun as "very uncertain, and it was entirely unsatisfactory." Mr. James testified on direct examination:

"Q. Describe that gun, Mr. James, the best you can remember it. A. Well, it was somewhere, I should judge about that long; it stuck in. Q. State whether it appeared to be a revolver or shotgun or rifle or what? A. Well, it was something like a rifle, but it was kind of long for a revolver, I should judge. I can't say. Q. Did it have a long barrel? A. Pretty fair

length. Q. How long would you say the barrel was, Mr. James?
A. I couldn't tell you. Q. Could you indicate with your hands?
* * * A. I should judge it was about that long (indicating
with hands) ; I couldn't tell exactly. * * * Q. If I hand you
State's Exhibit '4' [a photograph measuring 8 x 9 13/16 inches]
and put the narrow side of the State's exhibit between your
hands, does that about fill them? A. I couldn't tell just
exactly, but I seen it sticking in the door. * * * Q. Now, lay-
ing State's Exhibit '4' over your hands, are both edges of the
State's Exhibit '4' about on top of your hands, or not? A. Well,
by looking I couldn't tell exactly. Q. Where are the edges of the
paper with reference to your hands now? A. Well, it was a
little, I should think, longer, from what I seen. Q. You think
that the wider—this is the wider part of the paper; of course,
that is a little longer? A. Yes, near the short part, I should
judge, as near as I can tell.''

In addition to the testimony of James and Steiner, there is
testimony that on the night of the assault a bullet was found
in the side of the James house and another on the porch floor.
Also that both bullets were the same manufacture, .38 caliber,
and type as the bullets from which Posch testified he loaded
his revolver. The witness Krolick testified, in effect, defendant
impliedly admitted to him that he committed the assault with
a gun he had gotten at Hurstville on the night before. De-
fendant denied this testimony. He denied he ever had a revolver
or any gun except a shotgun.

Even in a civil case, where proof need be only by a pre-
ponderance of the evidence rather than beyond a reasonable
doubt, we have held that in the absence of an admission by the
adverse party it is not often proper to instruct that a party
having the burden of proof on any question has established his
claim as a matter of law. Low v. Ford Hopkins Co., 231 Iowa
251, 254, 1 N. W. 2d 95, 97; Maland v. Tesdall, 232 Iowa 959,
963, 5 N. W. 2d 327, 329. This is more especially true in a
criminal case.

This defendant, though he may be ever so guilty, has the
right under our constitution and statutes to have fact questions
determined by a jury. Constitution of Iowa, Article I, section

10; Code sections 13804, 13864. Instruction 17 was an abridgement of that right and an unwarranted invasion of the province of the jury. In State v. Hubbard, 218 Iowa 239, 241, 250 N. W. 891, 253 N. W. 834, we said:

"That it is error to assume facts as in existence or proven which are in controversy and disputed in the record, is too clear to warrant discussion. Especially is this true in a criminal case. Under our Constitution and statutes, juries are the triers of fact, either in civil or criminal cases, and the usurpation or assumption of this duty by the court is error and must not be sanctioned. * * *

"The only variance from this rule has occurred in cases in which both parties admit certain evidential facts to be true."

See, also, State v. Bige, 112 Iowa 433, 434, 84 N. W. 518; State v. Carter, 112 Iowa 15, ·20, 83 N. W. 715; State v. Austin, 109 Iowa 118, 120, 121, 80 N. W. 303; State v. Lightfoot, 107 Iowa 344, 351, 78 N. W. 41; Houston v. State, 4 [G. Greene] Iowa 437; 23 C. J. S. 701, section 1166.

III. Instruction 11 told the jury that defendant claimed an alibi. In language which has been approved, the instruction states that courts recognize the defense as one that can be easily manufactured; evidence in support thereof should be scanned with caution; the burden to prove the defense by a preponderance of evidence rests upon defendant, but that if, upon the whole case, including the evidence on the question of alibi, there was a reasonable doubt as to guilt, there should be an acquittal. See State v. Johnson, 221 Iowa 8, 20, 264 N. W. 596, 267 N. W. 91, and cases cited; State v. Wagner, 207 Iowa 224, 230, 222 N. W. 407, 61 A. L. R. 882; 23 C. J. S. 764, section 1206; annotations 67 A. L. R. 122, 126; 124 A. L. R. 471.

An instruction on alibi should not be given when testimony for a defendant seeks merely to controvert the State's evidence. Under a plea of not guilty, a defendant has a right to show not only that he did not commit the act but that he was doing something else at the time. Where an alibi is claimed, a defendant is attempting to prove not only that he was not present but that he was at another place so remote or under such circumstances that he could not have been present. Unless

a defendant is attempting to show the practical impossibility of his presence at the scene of the crime, he is not setting up an alibi, and his evidence should not be disparaged as an easily manufactured defense. In determining whether an alibi is claimed, the distance of defendant's whereabouts from the scene of the crime, as shown by his evidence, is not the only determining factor. The question is whether if defendant's evidence is believed the practical impossibility of his presence at the scene of the crime is thereby established. State v. Wagner, 207 Iowa 224, 230, 231, 222 N. W. 407, 61 A. L. R. 882, and cases cited; State v. Bird, 207 Iowa 212, 215, 220 N. W. 110, 222 N. W. 411; State v. Debner, 205 Iowa 25, 28, 215 N. W. 721; 15 Am. Jur. 14, 15, sections 314, 315; annotation 67 A. L. R. 138, 149. The question whether an alibi is claimed is not settled by what a defendant contends his defense is. State v. Bosworth, 170 Iowa 329, 333, 152 N. W. 581.

Here we think an alibi was claimed and instruction 11 was proper. The crime was committed at approximately 9 p. m. By the testimony of himself and nine other witnesses (all but one were members of defendant's family or relatives) defendant sought to account for his whereabouts every minute of the evening of the assault from the time he sat down to supper in his home between 7:15 and 7:45 till he returned home between 10:30 and 10:45. By these witnesses it was shown in much detail that defendant ate his evening meal at his home, ten and one-half miles from the place of the crime; he then took his family and hired hand, the alleged accomplice, to confession at the church in Andrew, six miles or more from the James home; from the church defendant with his family drove immediately to a beer tavern in Andrew; defendant and Steiner stayed inside the tavern all the time for about an hour and a half, when they left to go home about 10:30; during all that time defendant's car (the only suggested means of transportation available to defendant) was parked outside the tavern with five witnesses sitting in it waiting for defendant, Steiner, and another man and two boys to leave the tavern.

Notwithstanding defendant's claim to the contrary, it seems that defendant was attempting to prove he was at another place so far away *and under such circumstances* that he could

not have been present at the James place within at least an hour of the time the crime was committed. If this testimony is believed, certainly it was practically impossible for defendant to have committed the crime. State v. Bird, 207 Iowa 212, 215, 220 N. W. 110, 222 N. W. 411; State v. Parsons, 206 Iowa 390, 393, 220 N. W. 328. Cases cited by defendant, such as State v. Bosworth, 170 Iowa 329, 152 N. W. 581, and State v. Ireland, 192 Iowa 489, 185 N. W. 35, are not analogous.

IV. The only witness for defendant as to his whereabouts on the evening the crime was committed, not a relative or member of his family, was the Reverend Schmitz, pastor of the church where defendant went for confession. He testified he was able to fix the date as May 2d, because he was a Boy Scout official and a Scout court of honor was held the following Tuesday, May 5th. He was asked by defendant's counsel whether on the following morning, Sunday, he announced from his pulpit the court of honor. His affirmative answer was stricken as immaterial. Defendant contends the testimony was proper, to show the accuracy of the witness' memory. Without deciding whether the ruling was correct, it was not prejudicial. Reverend Schmitz testified that when he learned defendant was charged with this crime he looked up the record of his Sunday announcements to be sure May 2d was the evening that defendant attended confession. Further, it was not disputed that defendant attended confession on the evening of May 2d. Steiner, the State's principal witness, so testified. He, however, fixed the hour of the confession considerably earlier than defendant's witnesses.

V. Instruction 12 states, in substance:

"The Court has admitted evidence tending to establish that on May 1st, 1942, the witness Posch had a loaded revolver in a refrigerator in the back room of his tavern in Hurstville; that during the day Defendant was in the back room alone and that at night the revolver was no longer in the refrigerator. It is also in evidence that *the bullets retrieved at the Frank James home* after the shooting were of the same manufacture, *weight* and type as the ammunition contained in the box from which the revolver had been loaded. * * *

"Such evidence was not admitted for the purpose of establishing, or to aid in establishing the commission of a crime by the Defendant, separate from the one charged in the Indictment on trial. It was admitted only on the theory that if it were established that the Defendant did in fact procure the revolver at the Posch tavern, it would be thus likewise established that instrumentalities came into the possession of the Defendant of a character essential to the commission of the assault *in the manner established by the State.*

"You should scrutinize this evidence with care."

The instruction goes on to state that such consideration should be given the evidence referred to in the instruction, in connection with all other facts and circumstances in evidence, "as you deem it to merit."

Not only are the portions we have italicized objected to as unwarranted assumptions of fact but it is contended, we think properly, that this instruction gave undue prominence to testimony favorable to the State and ignored defendant's testimony in denial thereof. We have frequently held that the practice of setting out in an instruction testimony on which one party relies is not to be commended because it tends to give undue prominence to the testimony thus selected for special mention. Gregory v. Suhr, 224 Iowa 954, 957, 277 N. W. 721; State v. Walker, 192 Iowa 823, 840, 185 N. W. 619; Middleton v. City of Cedar Falls, 173 Iowa 619, 634, 153 N. W. 1040; Van Norman v. Modern Brotherhood, 143 Iowa 536, 551, 121 N. W. 1080. It was, of course, proper for the court to caution the jury that defendant was not on trial for stealing the Posch gun and for that purpose to make some reference to the testimony tending to show the taking of that gun.

But we have consistently held that where an instruction does set out testimony on a particular question that is favorable to one party it is reversible error not to set out testimony on that question which is unfavorable to that party. Instruction 12 violates this rule. It makes no mention of defendant's denial that he took the Posch revolver or that he ever had any gun except a shotgun. State v. Proost, 225 Iowa 628, 635–637, 281

N. W. 167, and cases cited; Middleton v. City of Cedar Falls, 173 Iowa 619, 637, 153 N. W. 1040; Whitman v. Chicago G. W. Ry. Co., 171 Iowa 277, 285, 153 N. W. 1023, 1026, where we "most emphatically dissent from the practice of reciting facts which militate against one party, without a recitation of the facts favorable to his contention * * *." See, also, 23 C. J. S. 770, 771, section 1216.

Instruction 12 is also vulnerable to defendant's criticism that it assumes as a fact that bullets were "retrieved at the Frank James home" and also as a fact "the commission of the assault in the manner established by the State," the plain inference being that the State had fully established that the assault was committed with a revolver. These were matters for the determination of the jury and the instructions should not have assumed their existence. State v. Hubbard, 218 Iowa 239, 250 N. W. 891, 253 N. W. 834, and cases cited.

Further, the evidence does not show that the bullets claimed to have been retrieved were of the same weight as the ammunition contained in the box from which it was contended the Posch revolver was loaded. The statement in the instruction of what the evidence shows in this regard is incorrect. See State v. Neff, 228 Iowa 383, 291 N. W. 415.

VI. Finally, it is contended it was error to receive the evidence tending to show defendant's theft of the Posch revolver on the afternoon of May 1st. The contention is without merit.

While it is said to be the general rule that evidence is not receivable of a crime not charged in the indictment, there are well-recognized exceptions to the rule. Evidence of another offense is admissible where it is so related to the offense charged that proof of the former tends to establish the latter; also where such evidence tends to identify the accused as the person who committed the crime charged. Evidence otherwise competent to prove some fact material to the crime charged is not inadmissible because it tends to prove defendant guilty of another crime. See State v. Vance, 119 Iowa 685, 686, 94 N. W. 204; State v. Harris, 153 Iowa 592, 594, 133 N. W. 1078· State v. Johnson, 221 Iowa 8, 14, 264 N. W. 596, 267 N. W. 91; State v.

Grimm, 221 Iowa 652, 266 N. W. 19; 20 Am. Jur. 289, section 310; 22 C. J. S. 1089, section 683; annotation 3 A. L. R. 1540.

Evidence tending to show that defendant took the Posch revolver fairly tends to prove his guilt of the crime charged. It tends to show his preparation for the principal offense and possession of the weapon which the jury might have found was used in the assault. See 22 C. J. S. 1159, section 691t. If Posch had given defendant his loaded revolver on the afternoon of May 1st, it could scarcely be claimed that evidence thereof would be inadmissible. Evidence that defendant procured the revolver by theft is no less relevant and admissible.

In order to be received under an exception to the general rule, proof that defendant committed the other act in question must be satisfactory. Mere suspicion is not enough. State v. Porter, 229 Iowa 882, 886, 887, 294 N. W. 898, and citations; 22 C. J. S. 1112, section 690. Without reviewing the evidence tending to show theft of the Posch gun by defendant, we think it is sufficiently satisfactory to render it admissible.

The errors pointed out in Divisions II and V entitle defendant to another trial.—Reversed.

MANTZ, C. J., and BLISS, MULRONEY, OLIVER, MILLER, WENNERSTRUM, and HALE, JJ., concur.

SMITH, J., takes no part.